Cases No. 20, 1744, Intel Corporation v. VLSI Technology Mr. Fleming Good morning, and may it please the Court, Mark Fleming on behalf of Intel. The Board failed to address one of Intel's key arguments which affects all the claims. We argued in our petitions that Takahashi discloses determining whether to power down a portion of a cash and could be combined with whose comparison of estimated power gain and power loss. The Board acknowledged that in its institution decisions, but then in the final written decisions, the Board refused to consider the argument. That was error, and VLSI has no meaningful response. The Board's decisions on institution make clear that one aspect of our argument was that a skilled artisan could, quote, modify Takahashi to explicitly calculate and compare estimated power loss and estimated power gain as taught in who, close quote. That's reading from 4159 of the appendix. The same language appears on 5154. And that's the point. You can take the determining from Takahashi and, to the extent needed, modify it based on the comparison of loss and gain in who. So for the Board to refuse to address an argument on the merits that we made and that the Board acknowledged we made is error, as this Court has held in cases like Vicor and Shinfu and Brunetics. VLSI cites no authority to the contrary. Rather, it's urging affirmance on various alternative grounds that the Board didn't reach. That's not proper in an agency case like this one under Chenery and this Court's own case law. So we would submit that, at the very least, the decisions need to be vacated and remanded so the Board can consider the merits of the argument in the first instance. I would say a word, if I may, on the second point of our appeal, which has to do with the disclosure of who. And that's the context in which the Board did address the determining whether to power down limitation. It did so only in the context of who, and it found that who didn't teach that limitation. And that finding, we would submit, is clearly mistaken. The Board itself... Can I ask you a question about that? Because I find this somewhat confusing. It seems to me clear on the face of it that who does teach determining to power down based on the decay interval. So in that sense, it does satisfy a determining step. What I thought the Board was saying about who is that it doesn't power down based on the relationship between the L2 access leak ratio. You contend that that affects the decay interval determination, and so there is a relationship. So it really isn't a question, is it, as to whether who teaches the determining step. The real question is whether it teaches a determining step based on a relationship to the L2 access leak ratio. I think in fairness to the Board, the Board did purport at least to decide both issues. I think that's certainly VLSI's position. But I'm pleased to take the question as you've asked it, Your Honor, which is, let's assume, which I think is plainly correct, that who does describe determining whether to power down, it does so based on the decay interval. To answer the question, who does teach that the proper decay interval is chosen based on what it calls the L2 access to leak ratio, and I think that's plainest on pages 1131 and 1132 of the appendix, which is discussing Figure 9 and its accompanying text. And if one looks on 1131 on the last full paragraph on that page, who says, beginning in the middle of that paragraph, when the L2 access to leak ratio equals 100, then small decay intervals, less than 8,000 cycles, are detrimental to both performance and power. This is because short decay intervals may induce extra cash misses by turning off cash lines prematurely. This effect is particularly bad when L2 access to leak is 100, because high ratios mean that the added energy cost of additional L2 misses is quite high. And so this is clearly saying... Help me to understand what you think the commission is saying about simulation, because they seem to be saying that there's no relationship between L2 access leak ratio and the decay interval, because somehow it's just a simulation. Is that what you understand to be saying? I must confess, Your Honor, I have a hard time understanding what the board makes of the fact that it's a simulation. I mean, just because who is benchmarking results for four different L2 access to leak ratio values, that doesn't mean that the values aren't being used to determine whether to power down a cash. I mean, if one looks at Figure 9, one can clearly see what who is doing, which is they've taken the four different curves, which represent the four different ratios, which are at the top of the chart, and they've plotted them to show the energy saved compared to not having a power down policy at all, based on the various decay intervals. And it shows that there clearly is a difference as to the optimal decay interval, which is the minimum of the curve, depending on which ratio you choose. So the entire purpose of this figure we've submitted is to figure out the best decay interval, depending on what ratio your particular system has, and who says that the ratio is going to vary depending on how you make the chip, how it's designed. So it uses these four as benchmarks, and then based on what your actual chip specs are, you can figure out which decay interval is best for your particular system. The idea is that this can be used as a model for an actual system based on actual estimates of L2 access to leak, and in fact, who has a review of reported data in the literature earlier in the reference on 1123 and 1124, as something DLSI admits in footnote 8 of its brief. So I don't understand really why the board was hung up on the fact that who calls this simulation data. It's still recommending a decay interval for almost all the systems of around 8,000, but when the ratio is really high, say 100, then any decay interval shorter than 8,000 will mean that the dissipated energy that occurs due to increased cache misses will quickly use up more power than you would if you didn't power down at all. Our expert, Dr. Raghunathan, explained this in detail. So I think this discussion reflects exactly what who says it's about in the language that the board quoted on page A20, that a basic principle of the evaluations is to measure the static power saved by turning off portions of the cache, which is the denominator of the L2 access to leak ratio, and then comparing it to the extra dynamic power dissipated by turning off cache lines. That's the numerator, and that's what they're plotting in figure 9, and it shows that who is determining whether to power down based on the decay interval, which in turn varies with and is based on the L2 access to leak ratio. Okay. Could you turn to maybe the third issue about whether Takahashi teaches estimated power gain? Absolutely, Your Honor. So this comes up in the context of our obviousness argument over Takahashi alone. The board indicated, I mean, there's a dispute as to whether it actually made a finding, but I think it came very close to saying that Takahashi's use of the cache miss rate would qualify as representative of the estimated power loss, but it said that by comparing it to a predetermined value, Takahashi was not comparing it to a proxy for estimated power gain, and we think that's incorrect because Takahashi does exactly what the patent is doing. Instead of coming up with a separate ratio, like who does, Takahashi's comparing the current cache miss rate to a predetermined value. Now the fact that Takahashi doesn't call it estimated power gain, that doesn't matter. The prior art doesn't have to use the same terminology as the patent, and the 014 patent does exactly the same thing that Takahashi does. It doesn't measure estimated power, which would be measured in nanojoules per second or watts or another scientific measure of power. Instead, it uses what it calls the amount of valid dirty information, and then it compares that to a predetermined threshold that it calls th, and as the board noted on page 18 of the appendix, the patent doesn't disclose the value of the threshold. It doesn't even disclose how it's determined, but it's clear that they're not measures of power. On page 12 of the red brief, VLSI itself refers to th as simply a threshold number of dirty bits. It's not a measurement of estimated power gain. Well, if the predetermined threshold amount of dirty information can be a proxy for power gain, as it clearly is in the patent, then Takahashi's predetermined threshold, which is based on a cache miss rate, can too. Both Takahashi and the patent are simply taking one parameter, in the patent's case dirty information, in Takahashi's case a cache miss rate, and setting a threshold where if the actual measured value is higher than the threshold, then powering down would dissipate too much dynamic power, so you don't do it, but if it's below the threshold, then saving the leakage power is worth it, so you do do it. So we would say that because Takahashi discloses an indistinguishable implementation from the 014 patent, Takahashi also discloses the claimed estimated power gain, and the board clearly erred and was unsupported by substantial evidence in concluding otherwise. So for that reason, and also for the reasons regarding the Takahashi-Hu combination that I was discussing earlier, we respectfully submit that the decision should be vacated and the case remanded. If the court has questions, I'm happy to answer them, otherwise I would appreciate reserving the balance of my time. Okay, any questions for Mr. Fleming at this point? No. No. All right, thank you. Then we'll hear from Mr. Vecchielli. Thank you, Your Honor. May it please the court, Cameron Vecchielli on behalf of DLSI Technology. As to this first point about whether Takahashi discloses the determining limitation and the suggestion that that wasn't argued, that's not right, right? They were incorrect about that. Well, we've certainly disputed that it teaches the determining limitation, and we've also disputed whether this was properly raised, if that's your Honor's question. Well, the question of whether it teaches it or not is not before us because the board just refused to consider the issue because it said it wasn't raised. But what I'm suggesting to you is that's clearly wrong, right? They did raise it in the petition. So it is our position that what was raised was that Takahashi taught the entire element of determining element, which is determining whether to power down based on estimated power loss. That was the first ground applied against the independent claim. At 4034, they argued Takahashi discloses power management circuitry that determines whether to power down at least a portion of the component during a low power mode. I mean, how clear does it have to be? That's pretty clear. Your Honor, yes. In one of the petitions, they separated the determining element, I believe based on the power management circuitry, because Takahashi describes circuitry as opposed to simulation and who. But if you look at the substance of the argument, in both cases, in both petitions, petitioner argues that Takahashi teaches the entire determining element, and as an alternative, that who teaches the entire alternative determining element. There is no suggestion that Takahashi's evaluation of cash misrate could be popped out and whose L2 axis leak ratio popped in. And that is the new argument raised for the first time in the hearing, upon which appellant seeks to rely in this proceeding. Okay. Well, why don't you go on to the second point, which is what the board is saying about who, which I find very confusing. I mean, you certainly agree that in who the decay interval is determining whether to power down, right? Yes. The basis of powering down is a period of time, the last thing in who, which is the decay interval. That's correct. Okay. So the real question here, it seems to me that who does teach then determining whether to power down, the question is whether the L2 ratio is affecting the decay interval calculation, right? Yes. And in petitions, appellant focused on this figure nine of who, which appears on page 1132 of the appendix. And what figure nine shows is the results of the simulation of a quantity called the normalized leakage energy as a function of two independent variables. One is the decay interval on the X. I don't understand the commission simulation point. What does that mean? I mean, you agree that who in figure nine shows that the decay interval is being determined based on this L2 ratio, right? No, we don't, Your Honor. And the reason is because the normalized leakage energy is calculated across a range of decay intervals, as you see there. And there are four values of the L2 axis leak ratio that are also applied as parameters. What who does not say is how to select the decay interval from these curves. It doesn't say that the minimum should be selected. It doesn't say that there is a monotonic trend. It says nothing. It simply calculates this dependent variable based on two independent variables. And what appellant suggested is that there should therefore be a dependence between the two independent variables. But that is not taught in who. It seems to be a different point, a different argument that the commission was addressing. They said this doesn't show that there's a relationship because it's a simulation. I really don't understand what that means. Well, there is a separate point about shows the relationship. What difference does it make that it's a simulation in terms of what the teaching you get from it? Well, Your Honor, for one thing, I believe that the board did not change the dependence of the decay interval on L2 axis leak. That was one of their points. They made a separate point that the L2 axis leak ratio takes assumed values. And this is on page 24 of the final written decision. They say that who uses assumed values as inputs to generate simulation data. And I think the significance of that is that the claim requires an estimated power gain and an estimated power loss resulting from powering down as two estimated quantities, whereas who merely provides one quantity taking assumed values, 5, 10, 20, and 100. Not estimated values. These are simply made up numbers that the authors chose to see how their simulations would behave. And so that is a separate basis for affirmance because it fails to show the estimation feature. But surely it suggests that these assumed values, as you call them, could be determined in the real world to determine what the actual value is, right? Well, it actually teaches against that. It talks about the difficulty of making estimates of power gain and power loss, which is why they focused on a ratio. L2 axis leak is only a ratio, whereas the claim requires an estimated power gain and a separate estimated power loss. So they actually describe the difficulty of making the estimates described in the claims, which the 0 and 4 inventors were the first to divide the method for. Well, but that seems to be, again, a different point that the commission was making. Maybe that's an argument the commission needs to address, but I don't see that that's what the commission decided, that there were difficulty in making the estimates and therefore it didn't teach. That's fair, Your Honor, yes. What they did find, however, is that the values upon which the appellant relied in his petition, and that is, again, the 5, 10, 20, and 100, were not estimated values. They were just made up values. The board says, who uses these assumed values of the L2 axis leak ratio of 5, 10, 20, and 100 as inputs to generate simulation data? Again, not estimated values used to make a determination of whether to be made up values used to see how a simulation behaves. You want to address the third point? Yes, Your Honor. So the dispute below with regards to the predetermined value centered on whether the predetermined value was nearly a prior measurement of the cash miss rate or some special, as counsel argued, threshold value representing a proxy for estimated power gain. And they couched their argument by referring to the 014 patent specification, very clear example of hindsight, arguing by analogy that because both are predetermined and both are vague in how they're described, they must therefore be the same. But Takahashi is very clear that the predetermined value is really just the last measured value of the cash miss rate, which is compared to the current measured value to determine the change of the cash miss rate. And that change of the cash miss rate is the foundation of the principle of operation of Takahashi. What Takahashi does is it powers down a portion of the cash, checks if the cash miss rate increased, and if it did, it powers it back up because it doesn't want to sacrifice performance. And it describes the cash miss rate as sort of a metric of performance. So this notion that it is some special threshold that is somehow related to an estimated power gain is absent from Takahashi. It is merely the last measured value of cash miss rate that is compared with the current value to see if there's been a change. Okay. Anything else you need to tell us, Mr. Vakili? One more point I'd like to make about who. There's a number of additional portions of describing how a completely new method for calculating, allegedly calculating, the decay interval based on the DL2 axis leak ratio or some vague statements about how one might reason about how decay intervals could depend on cost considerations. We maintain that these are improper, being newly cited on appeal. Before the board was this figure nine. And even if they were considered, we don't think it would necessarily change the outcome. But figure nine itself, again, shows two independent variables and the effect on a single dependent variable. It does not describe how to select particular values of either independent variable based on the other. And that was before the board. The board's decision was based on substantial evidence on the record below. I'm happy to answer any other questions your honors may have. Any more questions for Mr. Vakili? No. No. Okay. Thank you. Then we'll hear rebuttal from Mr. Fleming. Thank you, your honor. Only three points in response. First on this issue of a new argument in the petition, I direct the court to page 4054 of the appendix. And at the top of that page, this is our petition. The same language appears on 5049. We say a person of ordinary skill in the of estimating power gain and power losses with Takahashi's disclosure of powering down a portion of the cash only when a cash miss rate does not exceed a predetermined value threshold. This wasn't a new argument. It was in the petition. The board cited this language specifically in its decisions on institution at 4159 and 5154. Second point regarding who and the decay interval. Our point, and we think who discloses this clearly, is that the decay interval varies as the ratio changes. The text that I read in the colloquy with Judge Dyke during the opening presentation on 1131 says that when the L2 access to leak ratio is high, the decay interval should also be higher because if you turn it off too soon, then there will be additional cash miss rates that use up a lot more power and will quickly get rid of or even exceed the amount of energy that you would say by not even having a policy in place. Saying that who doesn't teach a relationship between decay interval and the L2 access to leak ratio is just contrary to the plain disclosure. In fact, if Mr. Vacula were right on this, who would not have occasion to say on 1131 that a decay interval of less than 8,000 cycles works when you have lower ratios but doesn't work when you have a higher ratio like 100? That is a relationship between the L2 access to leak ratio and the decay interval. The third point, Mr. Vacula said it was that to estimate L2 access or leak figures. That's not actually right. What WHO says, and this is on 1122, I believe, is, quote, since both leakage and dynamic power values vary heavily with different designs and fabrication processes, it is difficult to nail down specific values for evaluation purposes, close quote. That's why instead of picking just one system to evaluate, they focus on ratios that they can use as benchmarks. But WHO does not suggest that a particular ratio couldn't be determined for a particular system based on actual estimates of L2 access and leak figures. In fact, WHO actually sets forth calculations like that from a review of the literature on appendix 1123 to 24, and DLSI acknowledges that in the red brief in footnote 8 on page 54. And those are the basis for the theoretical analysis that WHO does, which the experimental results on 1131 and 1132 later reinforce. And I would note just as a final point, the claims of the 014 patent do exactly the same thing. They don't measure power either. They use proxies. In the case of the 014 patent, they use the amount of dirty bits compared to a threshold that the board itself on page 18 says is not explained what it is or how it's determined. So attempting to distinguish the prior art because they supposedly don't measure power is not an effective distinction whatsoever. The patent is exactly the same. Unless the court has further questions for me, we would respectfully submit that the final written decisions of the board should be vacated and the matters remanded. Any more questions for Mr. Fleming? No. No. Okay. Thank you both. The case is taken under submission.